UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JON L. and WEI S. CHRISTIANSON,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 4:20-CV-00325-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiffs' Motion for Summary Judgment, and Defendant's Motion to Dismiss and for Summary Judgment. (Dkt. 58, 62). The motions are fully briefed and ripe for the Court's consideration. On November 15, 2023, the Court heard oral argument on the motions. Having fully considered the parties' arguments and submissions, and the entire record, the Court will deny Plaintiffs' motion and will grant Defendant's motion.[1]

## BACKGROUND

This action concerns the rights and interests related to the Plaintiffs' use of and access to an irrigation ditch crossing land owned by the United States in S1/2 SW1/4 of

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 9).

MEMORANDUM DECISION AND ORDER 1

Section 9, T8N R14E, Boise Meridian. The ditch receives water from the Fourth of July Creek by way of a diversion, and delivers the water to lands owned by Plaintiffs.

The ditch was constructed by Plaintiffs' predecessor in interest, George Achen, between July 1906 and 1910.[2] On July 1, 1906, Achen filed an application for entry under the Desert Land Entry Act of 1877 for two adjoining land parcels located at W1/2 SW1/4 Section 4 and W1/2 NW1/4 Section 9, T8N R14E, Boise Meridian (collectively the "Desert Land Parcels"), and was issued a patent for both parcels on October 14, 1913. (Dkt 58-2, ¶¶ 1, 3 and Exs. A at 6589-98 and C); (Dkt. 62-7, ¶ 6).

On November 12, 1912, Achen filed an application for entry under the Homestead Act of 1862 for another parcel of land located at SW1/4 Section 9, T8N R14E, Boise Meridian (the "Homestead Parcel"), and received a patent for that parcel on March 18, 1914. (Dkt. 58-2, ¶ 5 and Ex. E); (Dkt. 62-7, ¶ 10). In 1925, Burlington Savings Bank acquired the Desert Land Parcels and the Homestead Parcel at a foreclosure sale. (Dkt. 58-2, ¶ 6); (Dkt. 62-7, ¶ 11); (Dkt. 69-1, ¶ 11).[3]

In 1933, the south half of the Homestead Parcel – S1/2 SW1/4 of Section 9, T8N R14E, Boise Meridian - was acquired by the United States (the "United States' Parcel"). The portion of the ditch running across the United States' Parcel is the subject of this

---

[2] The parties dispute when and where the ditch was constructed and completed. (Dkt. 3, ¶¶ 7-8); (Dkt. 62-7, ¶¶ 13-21); (Dkt. 69-1, ¶¶ 13-21). Further, the parties dispute whether the ditch was located on unreserved or reserved land at the time it was completed and, consequently, whether any of Plaintiffs' predecessors in interest obtained property rights related to the ditch.

[3] Prior to Burlington Savings Bank's acquisition, the parcels had been transferred from Achen to other individuals - D.M. Williams and Thos. D. Perry. (Dkt. 58, Ex. F, G).

litigation. The United States' Parcel presently lies on reserved land within the Sawtooth National Recreation Area (SNRA), which was created in 1972. However, the borders of the federal land in this area changed during the time relevant to this litigation.

At the time Achen began construction of the ditch in July 1906, it is undisputed that the Desert Land Parcels and the Homestead Parcel were unreserved private land. On November 6, 1906, President Theodore Roosevelt signed a Proclamation creating the Sawtooth Forest Reserve (SFR). (Dkt. 62-6, Ex. 5). The Desert Land Parcels and the Homestead Parcel were located within the borders of the SFR and, therefore, were reserved land beginning on November 6, 1906.

On May 19, 1913, the boundaries of the Sawtooth National Forest[4] changed by a Proclamation of President Woodrow Wilson, resulting in the Desert Land Parcels and Homestead Parcel being located outside the adjusted boundaries of the Sawtooth National Forest for a period of time - in an area referred to as the "Salmon River Open Strip" - until the boundaries were again changed to the present-day SNRA. (Dkt. 3, ¶¶ 18-20); (Dkt. 69-8, Ex. R-D). It is undisputed that the Desert Land Parcels and Homestead Parcel were unreserved land prior to November 6, 1906, and were reserved land from November 6, 1906 until at least May 19, 1913. However, the parties dispute whether the changes to the Sawtooth National Forest boundaries by President Wilson rendered the Desert Land Parcels and Homestead Parcel reserved or unreserved lands between May 19, 1913 and 1933, when the United States acquired its parcel.

---

[4] The Sawtooth Forest Reserve was renamed in 1908 to the Sawtooth National Forest.

On January 30, 1914, Achen obtained water License Number 5355 to divert water from the Fourth of July Creek. (Dkt. 63-6, ¶ 8). In 1989, Plaintiffs' predecessors in interest to the Desert Land Parcels subsequent to Achen, Jack Furey and Louis Racine, filed a Notice of Claim for a water right in the Snake River Basin Adjudication (SRBA).[5] On March 16, 1999, the SRBA entered a partial decree awarding a water right based on Furey and Racine's Notice identifying the point of diversion in Section 9, T8N R14E Boise Meridian. (Dkt. 63-6, ¶ 39). The SRBA entered a second amended partial decree on August 13, 2014, identifying the point of diversion for the water right in Section 16, rather than Section 9. (Dkt. 63-6, ¶ 43). The final unified decree was issued on August 26, 2014. (Dkt. 63-6, ¶ 44). The parties dispute the location of the ditch's point of diversion. (Dkt. 63-6, ¶ 13); (Dkt. 69-1, ¶¶ 29-32).

Plaintiffs acquired the Desert Land Parcels and the north half of the Homestead Parcel in 2004. The current ownerships of the respective parcels relevant to this litigation are depicted in the map below. (Dkt. 62-14, Dec. England, Ex. 18). Plaintiffs' parcel is located in Section 9 and colored yellow. The land owned by the United States Forest Service is just below Plaintiffs' parcel in Section 9 and colored green. The land owned by the state of Idaho is in Section 16, and is the southern-most parcel on the map colored in orange. The area at issue in this case is marked by the black square.

---

[5] The SRBA was a multi-year lawsuit, beginning in 1987 and concluding in 2014, to adjudicate all of the surface and ground water rights in the Snake River Basin water system. *In Re SRBA Case No. 39576 Subase No. 37-00864*, 429 P.3d 129, 132 (Idaho 2018). The Final Unified Decree issued on August 26, 2014, decreed more than 158,600 water rights. *Id.* at 133. The United States was joined as a party in the SRBA under the McCarran Amendment. *United States v. Idaho, ex rel. Dir., Idaho Dept. of Water Resources*, 508 U.S. 1, 3 (1993).

MEMORANDUM DECISION AND ORDER 4

Fourth of July Creek runs east to west through the lands of the state of Idaho and the United States. The irrigation ditch at issue here is delineated by a line with horizontal dashes which first follows Fourth of July Creek near the border of the parcels owned by the state of Idaho and the United States, then spurs off from the creek to the northwest, and then curves north-northeast into Plaintiffs' parcel.



In this lawsuit, the parties generally dispute the property rights and interests claimed by Plaintiffs and the location of the point of diversion. Plaintiffs argue the water and property rights secured by their predecessors in interest provides them with vested rights to use of and access to the ditch crossing the lands now owned by the United States in Section 9, and that the point of diversion is the Fourth of July Creek 1 diversion (FJC1) located in Section 16 on land owned by the state of Idaho. Defendant contests each of Plaintiffs' claims, disagreeing that Plaintiffs possess any property rights to the ditch

crossing land of the United States, and contends the point of diversion is located in Section 9 on the United States' Parcel.

On June 26, 2020, Plaintiffs initiated this lawsuit by filing a complaint against Defendant seeking declaratory relief and to quiet title concerning their rights and interests in the use of and access to the irrigation ditch. (Dkt. 1, 3). Specifically, Plaintiffs raise four claims for relief based on the following: 1) Declaratory Judgment Act, 28 U.S.C. § 2201; 2) Quiet Title Act (QTA), 28 U.S.C. § 2409a, relevant to the Mining Act of 1866 – RS 2339; 3) QTA, 28 U.S.C. § 2409a, relevant to the Desert Land Entry Act of 1877 – RS 2340; and 4) Idaho Code Sections 6-401, 42-101, and 42-1102. (Dkt. 3).

The action was stayed at the joint request of the parties to allow time for the parties to explore possible settlement. (Dkt. 12, 15, 17). On April 20, 2022, the stay was lifted and new case management deadlines were set. (Dkt. 30, 35). The parties engaged in a period of discovery and then filed the motions presently before the Court, which are the subject of this Order.

## STANDARDS OF LAW

### 1. Motion to Dismiss

"Federal courts are courts of limited jurisdiction" and may only hear cases as authorized by Article III of the United States Constitution and statutes enacted by Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, federal courts cannot consider claims for which they lack subject matter jurisdiction. The Court must dismiss a case if, at any time, it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). "[I]n general, dismissal for lack of subject matter

jurisdiction should be without prejudice." *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 n. 2 (9th Cir. 2019). However, where the bar of sovereign immunity is absolute and cannot be cured, dismissal may be with prejudice. *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988). The party invoking the Court's jurisdiction bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co*., 264 F.3d 952, 957 (9th Cir. 2001); *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (The party asserting a claim against the United States bears "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress.").

A motion challenging the court's subject matter jurisdiction is properly brought pursuant to Rule 12(h)(3) where, as here, it is made after the filing of a responsive pleading. *See e.g. Dunnan v. United States*, 2017 WL 1088088, at *1 (E.D. Wash. March 22, 2017). A challenge to subject matter jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. In a facial attack, the court "[A]ccept[s] the plaintiff's allegations as true" and "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction," "drawing all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id*. In a facial attack, our inquiry is confined to the allegations in the complaint, while a factual attack permits the court to look beyond the complaint.

*Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2004). Here, Defendant raises a facial challenge to Claims One and Four. (Dkt. 62).

### 2. Motion for Summary Judgment

Summary judgment is appropriate where a party demonstrates that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact "that may affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact and a favorable judgment is due as a matter of law. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, the non-moving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The non-moving party must go beyond the pleadings and show "by…affidavits, or by the depositions, answers to interrogatories, or admissions on file," that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. The Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

When cross-motions for summary judgment are filed, the Court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all

reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating these motions, a court "must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## ANALYSIS

Plaintiffs no longer seek relief on Claim One under the Declaratory Judgment Act. (Dkt. 69 at 4). Defendant agrees, arguing Claim One fails for lack of subject matter jurisdiction. (Dkt. 73 at 1). Accordingly, Claim One will be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). The Court finds dismissal with prejudice is proper because the lack of subject matter jurisdiction is absolute and cannot be cured. *Frigard*, 862 F.2d at 204; Fed. R. Civ. P. 41(a)(2) (Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").

Plaintiffs move for summary judgment on their remaining claims, seeking a determination that the point of diversion is located at FJC1, and quieting title to the entire length of the ditch from FJC1 to where the ditch enters Plaintiffs' property in Section 9. (Dkt. 58 at 17). Plaintiffs' Claims Two and Three are raised under the QTA and other federal statutes, and Claim Four is based on Idaho law. (Dkt. 3). Conversely, Defendant moves to dismiss Claim Four for lack of subject matter jurisdiction, and moves for summary judgment on Claims Two, Three, and Four. (Dkt. 62, 73). Further, Defendant

argues the Court should reject Plaintiffs' unpleaded claims of an easement by necessity or prior use. (Dkt. 62, 73). The Court will address below both parties' motions in the context of the claims to which they relate.

### 1.  Claims Two and Three – Quiet Title Act

Claims Two and Three are brought under the QTA, alleging Plaintiffs possess the rights to use and access the ditch from the FJC1 diversion to their property, pursuant to the Mining Act and the Desert Land Entry Act.

### A.  Mining Act of 1866 and Desert Land Entry Act of 1877

The Mining Act[6] provided federal protection to water rights and rights of way on unreserved public land that were established pursuant to state and local law and custom. *See Andrus v. Charlestone Stone Prods. Co., Inc*., 436 U.S. 604, 614 (1978); *Jennison v. Kirk*, 98 U.S. 453, 460-461 (1878).[7] The Ninth Circuit has similarly recognized that under the Mining Act, "an owner of water rights possessed a right of way over federal lands for the purpose of diverting water by 'the construction of ditches and canals.'" *United States v. Estate of Hage*, 810 F.3d 712, 717-718 (9th Cir. 2016) (discussing

---

[6] The Mining Act of 1866, codified at 43 U.S.C. § 661, states in relevant part:

> Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed….

[7] The Federal Land Policy and Management Act (FLPMA), enacted in 1976, repealed the Mining Act's provisions that guaranteed a right of way for the purpose of constructing ditches and canals, but expressly preserved any existing rights of way that had been established prior to the FLPMA. *See* 43 U.S.C. § 1769(a).

MEMORANDUM DECISION AND ORDER 10

*Hunter v. United States*, 388 F.2d 148, 154 (9th Cir. 1967) (quoting Act of July 26, 1866, ch. 262, § 9, 14 Stat. 251, 253, codified at 43 U.S.C. § 661 (1866); 30 U.S.C. § 51 (1866)). To establish that a right of way for an irrigation ditch was obtained under the Mining Act, the Plaintiffs have the burden of proving their predecessors in interest possessed a vested and accrued right to the use of water recognized by local custom or law, and that the ditch was constructed and completed on unreserved public lands. *Bear Lake & River Water Works & Irrigation Co. v. Garland*, 164 U.S. 1, 16-19 (1896).

The Desert Land Entry Act allows private individuals to apply for an entry right by filing a declaration stating his or her intention to reclaim a tract of desert land by conducting water upon the same within a period of three years. 43 U.S.C. § 321. The applicant must have had a prior appropriation of the water right to be used for that purpose. The statute provides that any time within three years of the filing of the declaration, a patent shall issue upon a satisfactory proof of the reclamation and remittance of proper payment.

### B.  Discussion

Under the Mining Act, Claim Two, Plaintiffs claim the FJC1 diversion, water rights, and ditch all existed and were in use on unoccupied and unreserved land by their predecessors in interest, and, therefore, they acquired vested interests in the diversion, conveyance of water, and an easement to access and use of the ditch. (Dkt. 3, ¶¶ 34-41). Under the Desert Lands Entry Act, Claim Three, Plaintiffs claim their predecessors in interest obtained title to the land as well as all right, privileges, and appurtenances attached to the land – namely, the diversion, ditch, conveyance, and access rights – when

the land was unreserved in 1913, and those rights, privileges, and appurtenances passed to Plaintiffs with title to the land. (Dkt. 3, ¶¶ 42-46).

Both of the QTA claims turn on what, if any, property rights were established by Plaintiffs' predecessors, and whether the parcels were reserved or unreserved public land at that time. *See Baker Ranches, Inc. v. Zinke*, 625 F.Supp.3d 1080, 1096 and 1099 (D. Nev. 2022) (The Mining Act protected water rights and rights of way on public land, but not lands reserved or withdrawn from the public domain.); 43 U.S.C. § 321 (The Desert Lands Act allowed private individuals to acquire unappropriated public desert lands upon assertion of intent to reclaim the lands for irrigated agriculture.). It is undisputed that the United States' Parcel was reserved public land from November 6, 1906 until at least May 19, 1913, and again after the United States acquired it in 1933. (Dkt. 62-6, Ex. 5); (Dkt. 69-8, Ex. R-D). Thus, for Plaintiffs' QTA claims to survive, the property rights they allege must have arose prior to November 6, 1906, or, possibly, between May 19, 1913 and 1933.[8]

Plaintiffs argue they have a right of way under the Mining Act for two reasons. First, Plaintiffs argue the ditch was constructed and in use by Achen by the time of the 1906 growing season, which was prior to the reservation of Section 9 as a National Forest in November 6, 1906. (Dkt. 69 at 10-12). Plaintiffs contend that Achen had therefore secured a right of way to the ditch under local law - namely, Section 3181 of the Idaho Revised Statutes of 1887, now codified at Idaho Code Section 42-1102(1). Second,

---

[8] The parties dispute whether the parcel was reserved or unreserved land between 1913 and 1933.

MEMORANDUM DECISION AND ORDER 12

Plaintiffs argue the ditch was constructed and conveying water when Section 9 was removed from the Sawtooth National Forest by President Wilson on May 19, 1913, and was once again unreserved land. (Dkt. 69 at 13). Similarly, under the Desert Land Entry Act, Plaintiffs claim Achen's 1913 patent conveyed title as well as all appurtenances attached to the land, including rights to the ditch, because the parcel was unreserved land at that time based on President Wilson's Proclamation. Further, Plaintiffs contend the United States has admitted Plaintiffs were entitled to a right of way. (Dkt. 69 at 16).

Defendant asserts Plaintiffs cannot establish the elements necessary to obtain an easement under the Mining Act because they did not obtain a vested water right and did not complete construction of the ditch before the land was reserved as part of the Sawtooth National Forest in 1906, and that the land was never unreserved after that date. (Dkt. 62 at 20-21). Similarly, Defendant argues Claim Three fails as a matter of law because the Desert Lands Entry Act does not grant easements on reserved land through the conveyance of appurtenances, and because Achen did not receive his 1913 patent until after the land was reserved in 1906. (Dkt. 62 at 22-23). Defendant further contends the prior owners could not obtain an easement across their own land and any easement that may have existed was eliminated under the merger doctrine, defeating both QTA claims. Finally, Defendant disputes admitting to any right of way for the ditch. (Dkt. 73).

A careful review of the record reveals that the parties agree Achen began construction of the ditch in July of 1906 and the ditch was completed sometime before 1910. (Dkt. 73 at 7). It is further undisputed that Achen obtained a right to divert water from Fourth of July Creek from the state of Idaho in 1914. (Dkt. 58-2, ¶ 8 an Ex. B);

(Dkt. 63-3, ¶ 8) (License 5355 for 6.4 cfs "to be diverted at a point about ½ mile about mouth of Fourth of July Creek and about 20 rods above County road."). However, the parties strenuously dispute exactly when and where the ditch was constructed and completed, the location of the point of diversion, and whether the ditch was located on reserved or unreserved public land at the time it was completed. Those disputed facts preclude summary judgment to the extent it concerns whether Plaintiffs possess a property right to use and access of the ditch crossing the United States Parcel arising under the Mining Act and the Desert Lands Act. Nonetheless, summary judgment on the QTA claims in favor of Defendant is appropriate here because, as a matter of law, Plaintiffs cannot establish that any easement encumbered the land at the time the United States acquired its parcel, or thereafter.

The Homestead Parcel was in private ownership from at least 1914 to 1933, the time period from the issuance of the patent on the Homestead Parcel until the United States acquired the south half of the parcel. It is undisputed that during that entire time, the Homestead Parcel and Desert Lands Parcel were commonly owned – first by Achen, then his successors, and finally Burlington Savings Bank. (Dkt. 58-2, ¶¶ 5, 6 and Ex. E); (Dkt. 62-7, ¶11). Common ownership of the parcels began with Achen's receipt of the Homestead Patent in 1914, and lasted until 1933 when the United States acquired its parcel. (Dkt. 58-2, ¶ 5 and Ex. E) (Homestead Patent was issued to Achen on March 18, 1914). The United States' acquisition of the southern portion of the Homestead Parcel in 1933 was the event that severed unity of ownership in the dominant and servient lands across which the ditch lies.

MEMORANDUM DECISION AND ORDER 14

Given these undisputed facts, the Court finds as a matter of law that no easement existed at the time the United States acquired its parcel. "[A]n easement is defined as a right in the lands of another, and therefore one cannot have an easement in his own lands." *Fitzpatrick Trustees of Fitzpatrick Revoc. Trust v. Kent Trustees*, 458 P.3d 943, 946-47 (Idaho 2019) (citing *Capstar Radio Operating Co. v. Lawrence*, 283 P.3d 728, 737 (2012)). Thus, the prior owners of the parcels during the time of private ownership could not validly grant themselves an easement in their own property. Nor did the patents received under the Homestead Act or Desert Land Entry Act convey an easement in the ditch. *See Fitzgerald Living Trust v. United States*, 460 U.S. 1259, 1265-68 (9th Cir. 2006); *McFarland v. Kempthorne*, 545 F.3d 1106, 1108-11 (9th Cir. 2008).

Any easement that may have existed prior to 1914, was extinguished once the parcels came into common ownership. "Under the merger doctrine, when land burdened by an easement and land benefited by an easement come into common ownership in fee simple, the need for an easement is destroyed and the easement is extinguished." *Easterling v. HAL Pacific Properties, L.P.*, 522 P.3d 1258, 1273 (Idaho 2021) (recognizing the merger doctrine applies to express and implied easements); *see also Aizpitarte v. Minear*, 508 P.3d 1260, 1269 (Idaho 2022) (same). Because the parcels remained commonly owned until the United States acquired titled, no easement existed at the time the United States acquired its parcel. Therefore, the southern half of the Homestead Parcel was unencumbered when United States obtained ownership.

Once the United States acquired title to the southern portion of the Homestead Parcel free of any easements, it became federal property and Idaho law cannot grant an

MEMORANDUM DECISION AND ORDER 15

easement on the federal property without express authorization from Congress. *Utah Power & Light Co. v. United States*, 243 U.S. 389, 405 (1917). Finally, Plaintiffs' right to convey water from the FJC1 diversion does not establish a property right to the ditch. (Dkt. 3 at ¶ 48); *Easterling*, 522 P.3d at 1275 (recognizing Idaho's quiet title act excludes water rights); *Swank v. Sweetwater Irrigation & Power Co.*, 98 P. 297, 299 (Idaho 1908) ("Ownership of a ditch and the water right for waters to flow through the ditch may, and often do, exist in different parties. The existence of the one right does not necessarily imply the existence of the other right in the same party.").

For these reasons, the Court finds as a matter of law that no easement or right of way existed when the United States acquired ownership of its parcel in 1933. Thus, Plaintiffs cannot establish the existence of an easement or right of way under the Mining Act or the Desert Land Entry Act. Accordingly, the Court will grant summary judgment in favor of Defendant on Claims Two and Three, and will deny Plaintiffs' motion.

## 2. Claim Four – Quiet Title Under Idaho Law

Defendant moves to dismiss Claim Four for lack of subject matter jurisdiction and because the QTA is the exclusive remedy for claims seeking a title determination against the United States. (Dkt. 62, 73). Further, Defendant moves for summary judgment on Claim Four, arguing it fails as a matter of law under the merger doctrine and because Idaho law cannot grant property rights in federal property. Plaintiffs disagree and move for summary judgment in their favor on Claim Four. (Dkt. 58).

### A. Subject Matter Jurisdiction and Exclusivity of the QTA

MEMORANDUM DECISION AND ORDER 16

To the extent Claim Four challenges the United States' title to real property under state law, the claim must be dismissed for lack of subject matter jurisdiction. (Dkt. 3, ¶¶ 47-51). An action can be brought against the United States only where the federal government waives its sovereign immunity. *See Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996). Absent a clear waiver of sovereign immunity, the Court is without subject matter jurisdiction and the case must be dismissed. *Block v. N. Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 280 (1983) (A plaintiff is "barred by federal sovereign immunity from suing the United States in the absence of an express waiver of this immunity by Congress."); *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1096 (9th Cir. 2005) ("Absent a clear waiver, sovereign immunity precludes suit against the United States.").

The United States has waived sovereign immunity for claims brought against it under the QTA. 28 U.S.C. § 2409a(a). However, because the United States has not waived sovereign immunity for claims brought against it to quiet title under Idaho law, the Court is without jurisdiction over any such claim. *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011). Further, the QTA is "the exclusive means by which adverse claimants [can] challenge the United States' title in real property." *Block*, 461 U.S. 273, 286. Accordingly, Claim Four will be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h). Because the exclusivity of the QTA and the absence of a waiver of sovereign immunity are absolute bars to Plaintiffs' state law claims challenging the United States' title to real property, the dismissal will be with prejudice and without leave to amend. *Frigard*, 862 F.2d at 204.

### B.  Merger Doctrine and Idaho Law

As with Claims Two and Three above, Defendant argues summary judgment is appropriate on Claim Four because there was no easement during the time the land now owed by the United States was in private ownership. (Dkt. 62 at 23). Further, Defendant asserts, the southern half of the Homestead Parcel became federal land when it was acquired by the United States, and Idaho law cannot and does not operate to grant an easement on federal property. Plaintiffs disagree arguing they possess an easement or right of way to the ditch, which arose or encumbered the land when the United States took ownership of its parcel. (Dkt. 69). For the reasons that follow, the Court will grant summary judgment on Claim Four.

It is undisputed that the Homestead Parcel and Desert Lands Parcel were commonly owned between 1914 and 1933. (Dkt. 58-2, ¶ 6) (Dkt. 62-7, ¶11). During that time, no easement was created and any easement that existed previously was extinguished. *Fitzpatrick Trustees*, 458 P.3d at 946-47; *Easterling*, 522 P.3d at 1273; *Aizpitarte*, 508 P.3d at 1269. Therefore, the southern portion of the Homestead Parcel was unencumbered when United States obtained ownership. Once the United States acquired title to the southern portion of the Homestead Parcel free of any easements, it became federal property. Idaho law cannot grant an easement on the federal property without express authorization from Congress. *Utah Power & Light Co.*, 243 U.S. at 405. Therefore, Claim Four fails as a matter of law.

Further, Idaho law does not create an easement or right of way to the ditch as Plaintiffs allege. (Dkt. 3, ¶¶ 1, 22-23, 47-51); (Dkt. 58 at 14-15); (Dkt. 69 at 12-13).

MEMORANDUM DECISION AND ORDER 18

Plaintiffs contend that they possess a right of way to the ditch for the diversion of water based on Idaho Code Section 42-1104 (previously Idaho General Laws 1899, p. 380, Section 13). (Dkt. 58 at 14). However, Idaho Code Section 42-1104, and its predecessor, expressly apply to rights of way over lands owned or controlled by the state of Idaho – not land owned by the United States. Thus, that provision is not a source of a right of way here, because the land across which the ditch runs was not and is not owned by the state. As previously discussed, the Homestead Parcel was in private ownership from 1914 to 1933, and the southern half of the parcel has been owned by the United States since 1933.

Plaintiffs next argue the ditch was open and visible prior to and at the time the United States acquired its parcel and, therefore, under Idaho Code Section 42-1102(4), the United States took ownership of the parcel subject to the ditch right of way, which was appurtenant to the land. (Dkt. 3, ¶ 50); (Dkt. 58 at 15). However, the notice provision in Idaho Code Section 42-1102(4) that Plaintiffs rely on was added by amendment in 1996, and has an effective date of March 12, 1996. The statue does not plainly have retroactive application such that it creates a right of way for a ditch dating back to 1933. (Dkt. 63-4) (legislative history amending Idaho Code § 42-1102 to "clarify" what the right of way includes and what constitutes notice of the existence of a right of way relevant to a ditch).[9]

---

[9] The Government argues the statute does not apply retroactively. (Dkt. 62 at 23-24). While somewhat equivocal, Plaintiffs' response does not expressly dispute that Idaho Code Section 42-1102 does not retroactively create an easement. (Dkt. 69 at 12-13). Rather, Plaintiffs assert that the statute is an "explicit recognition" of Idaho common law regarding easement by prior use and necessity which, Plaintiffs contend, establishes that the right of way in the ditch appurtenant to the land existed at the time the United States acquired its parcel. The common law implied

Additionally, the statute does not itself grant a right of way. Instead, Idaho Code Section 42-1102 entitles owners of land the ability to obtain a right of way to ditches, canals, conduits, and embankments existing on the effective date and those constructed thereafter. *See* Idaho Code § 42-1102(1), (6). There is no indication that the statute is self-executing so as to create an uncontested right of way based solely on the existence of a ditch, canal, or other conduit for irrigation. Rather, property owners must take appropriate action to establish ownership of the right of way. *See e.g., Easterling*, 522 P.3d at 1273 ("[A]n easement by necessity does not 'arise' upon severance in the sense of immediately creating an enforceable easement in fact…Instead, it is a right that remains a dormant legal fiction unless, or until, a judgment establishes its existence and enforceability in fact; the necessity ends; or the statute of limitations…extinguishes the right….") (emphasis omitted); *Swank*, 98 P. at 299 (Party claiming adverse possession must obtain an easement and right of way either by purchase or condemnation.). Here, Plaintiffs do not allege or point to any record demonstrating the prior owners of the Homestead Parcel undertook proceedings to establish ownership of an easement or right of way in the ditch.

For these reasons, the Court finds that Idaho Code Sections 42-1102 and 42-1104 did not establish any easement or right of way that encumbered the land when the United States acquired ownership of the parcel. Plaintiffs' right to convey water from the FJC1 diversion also does not itself establish a property right to the ditch. (Dkt. 3, ¶ 48);

---

easement claims are addressed in the following section.

*Easterling*, 522 P.3d at 1275 (recognizing Idaho's quiet title act excludes water rights). Accordingly, the Court will grant summary judgment in favor of Defendant on Claim Four and will deny Plaintiffs' motion.

### 3. Claim for Implied Easements

Plaintiffs argue summary judgment in their favor is proper because they possess implied easements of necessity and prior use under state law allowing them to access and use the ditch located on land now owned by the United States, and that the SRBA is a binding adjudication of the point of diversion. (Dkt. 58). Defendant disagrees, arguing Plaintiffs did not plead a claim for implied easements and, regardless, any such claim fail as a matter of law. Further, Defendant argues the SRBA adjudication does not collaterally estop it from contesting the historic location of the point of diversion. (Dkt. 62, 73).

### A. Unpleaded Claims for Implied Easements

Plaintiffs argue they hold an implied easement or right of way to the ditch based on prior use and necessity pursuant to Idaho law. Plaintiffs contend the easements arose when unity of title was severed and the United States acquired the land at S1/2 SW1/4 of Section 9 in 1933. (Dkt. 58 at 14-16; Dkt. 68 at 10; Dkt. 69 at 4-9). Defendant asserts that Plaintiffs failed to plead any claims for an implied easement by necessity or by prior use and, further, did not plead any such claims with the particularity required by the QTA. (Dkt. 73 at 3). Plaintiffs maintain the Amended Complaint states claims for implied easements and, regardless, that they have cured any deficiencies in the pleading by clarifying their claims and the relevant factual bases. (Dkt. 69 at 5-7).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Yet, federal notice pleading standards still require a plaintiff to articulate a cause of action by describing the nature of the claim and stating the legal basis for the claim.

It is impermissible to add a new claim or assert a new legal theory for the first time at the summary judgment stage. *See Echlin v. PeaceHealth*, 887 F.3d 967, 977–78 (9th Cir. 2018); *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("Nevertheless, our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.") (citing *Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.'")). A party may not defeat or prevail on a motion for summary judgment by raising new theories that lie outside the scope of their pleadings and the limits of discovery such that the defendant could not fairly anticipate it. *Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1118-19 (E.D. Cal. 2018). The proper procedure for a plaintiff seeking to assert a new claim at summary judgment, is to amend the complaint.

MEMORANDUM DECISION AND ORDER 22

Having carefully reviewed the Amended Complaint, the Court finds Plaintiffs have not plead any state law based claims for implied easements to the use and access of the ditch based on necessity or prior use. (Dkt. 3). Rather, the allegations in the Amended Complaint plainly assert that the water and property rights Plaintiffs' claim to possess, arose from patent deeds, the SRBA adjudication, and federal and state statutes - not any implied easements. *See e.g.*, (Dkt. 3, ¶ 2) (alleging the parcel of land was burdened by Plaintiffs' interest in the ditch at the time the United States acquired the land by citing caselaw finding a right of way by express grant under the Mining Act of 1866 – Section 2339, but not by adverse use or prescription); (Dkt. 3, ¶¶ 28, 31, 35-36, 44-45, 49) (relying on federal and state statutes as the bases for the claimed right of way).

While there are factual allegations in the Amended Complaint which may have supported a claim for an implied easement, Plaintiffs did not plead any such claim. Stray references to "prior use" and broad assertions of state law based rights of ways to the use and access of an existing ditch, are simply too general to satisfy Rule 8, particularly when reading the pleading in its entirety.

Plaintiffs may not raise new claims now by moving for summary judgment on a wholly new legal theory not previously plead. *Echlin*, 887 F.3d at 977–78. The fact that the Forest Service previously acknowledged the possibility of easement by prior use, does not equate to or rectify the failure to plead a claim for an implied easement in the Amended Complaint. The Amended Complaint gives no notice, let alone fair notice, to Defendant that Plaintiffs were raising claims of an implied easement under state law. Fed. R. Civ. P. 8(a)(2). Even if Defendant knew such claims were a possibility prior to the

MEMORANDUM DECISION AND ORDER 23

initiation of this lawsuit, Defendant had no way of knowing whether Plaintiffs were

pursuing that legal theory in this action unless it was plead in the Amended Complaint.

The Court disagrees with Plaintiffs' assertion that they have "cured any [pleading]

deficiencies by sufficiently clarifying their claims and the relevant factual basis for those

claims." (Dkt. 69 at 7). The claims stated in the Amended Complaint are plainly and

expressly based on the existence of patent decrees, the SRBA adjudication, and statutory

law. (Dkt. 3). Far from mere clarification, Plaintiffs' briefing on the pending motions

now advances a new claim alleging the right of way sought to be decreed arose from

implied easements. This they cannot do. *Echlin*, 887 F.3d at 978 (attempting to add a

claim at the summary judgment stage is impermissible). Moreover, Plaintiffs' briefing

and arguments are variable and evolving as to the facts and bases underlying their

assertions of an implied easement.[10] At best, Plaintiffs appear to contend that an implied

---

[10] Plaintiffs' initial briefing argues an implied easement by necessity was created in 1933 when the southern half of the Homestead Parcel was transferred from private ownership to the United States, citing only federal caselaw. (Dkt. 58 at 15). Yet, in a footnote, Plaintiffs refer to the existence of a "state law easement." (Dkt. 58 at 16, n. 6). Later, Plaintiffs' response brief asserts that state law governs the existence of implied easements by prior use and necessity. (Dkt. 69 at 8). In any event, Plaintiffs new assertions of an implied easement appear argue the property conveyed to the United States in 1933 was encumbered by an easement arising under state law when the land was privately owned. To extent Plaintiffs argue an implied easement arose during the time the United States owned the land, the claim would be governed by federal law. *McFarland*, 545 F.3d at 1110-11. However, under federal law, Plaintiffs have failed to plead a claim of an implied easement with the particularity required by the QTA, which "generally necessitates a great deal of specificity." *McMaster v. United States*, 731 F.3d 881, 898 (9th Cir. 2013) ("To invoke the QTA, a complaint must 'set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.'") (quoting 28 U.S.C. § 2409a(d)); *Hazel Green Ranch, LLC v. United States Dept. of Interior*, 490 Fed. Appx. 880, 882 (9th Cir. 2012) (holding QTA pleading standard was not satisfied because plaintiff "fail[ed] to specify whether the implied easement was obtained by prior use or prescriptive use")). Further, no implied easement arises under the Homestead Act or the Desert Land Entry

MEMORANDUM DECISION AND ORDER 24

easement existed and/or was revived when the United States acquired the land in 1933. (Dkt. 58, 69); (TR 11/15/2023 hearing at 3:02:00) (Plaintiffs' counsel arguing the implied easement by prior use "sprang back into being" upon the United States obtaining its parcel.).[11] However, the allegations from the Amended Complaint that Plaintiffs rely on to support their contention do not state a standalone claim for an implied easement. (Dkt. 69 at 6) (citing Dkt. 3, ¶¶ 2, 5, 21, 31); (TR hearing 11/15/2023 at 3:02:18-3:07:54) (citing Dkt. 3, ¶¶ 1, 2, 3, 10, 11, 49, and 50). Rather, the paragraphs Plaintiffs argue support an implied easement claim cite to caselaw and statutes upon which their other stated claims are based - not any claim of implied easements. (Dkt. 3, ¶¶ 1, 2, 3, 10, 11, 31, 49, and 50). Moreover, the allegations Plaintiffs point to are far too general and broad to provide Defendant notice of any claim for an implied easement. (Dkt. 3, ¶¶ 1, 2, 3, 5, 10, 11, 21, 10, 49, 50). Thus, there is no fair interpretation of the Amended Complaint upon which a claim for an implied easement can be found, let alone one that provides reasonable notice of such a claim.

Based on the foregoing, the Court finds Plaintiffs have not plead a claim for any implied easements. Accordingly, Plaintiffs' motion will be denied. (Dkt. 58). Plaintiffs have not requested leave to amend their pleading. Nevertheless, the Court considered whether to allow Plaintiffs leave to amend to add a claim for implied easements. Fed. R.

---

Act. *Fitzgerald Living Trust*, 460 F.3d at 1265-68. For these reasons, the Court finds Plaintiffs have not plead an implied easement claim nor clearly stated the particulars required to sustain such a claim under either federal or state law.

[11] Citations to the audio transcript from the November 15, 2023 hearings are denoted as "TR."

Civ. P. 16(b)(4) (requiring good cause for allowing amendment of the pleading after a scheduling order is entered). For the reasons discussed below, the Court declines to do so because further amendment would be futile. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1060 (9th Cir. 2018) (holding "district court did not abuse its discretion in denying leave to amend" where amendment would be futile).

### B.  Futility of the Implied Easement Claims

There are four reasons that amendment of the pleading is futile, all of which are discussed more fully above. First, no express or implied easement or right of way was created or existed during the time the property was in private common ownership prior to the United States acquiring title in 1933. The basic principles of property law and the merger doctrine preclude the existence of any implied easement during the time the land was in private common ownership. *See Fitzpatrick Trustees*, 458 P.3d at 946-47 ("one cannot have an easement in his [or her] own lands."); *Easterling*, 522 P.3d at 1273 (easement is extinguished upon common ownership). Second, state law cannot establish an easement over federal land. *See Utah Power & Light Co*., 243 U.S. at 405. Thus, no easement was created or revived based on state law when the United States severed the common ownership and acquired the land in 1933. Third, the QTA is the exclusive remedy to challenge the United States' title in real property. *Block*, 461 U.S. at 286. Fourth, there is no waiver of sovereign immunity for claims brought against the United States to quiet title under state law. *Block*, 461 U.S. at 280. Thus, a claim for an implied easement based on state law fails for want of subject matter jurisdiction.

MEMORANDUM DECISION AND ORDER 26

The Court therefore finds amendment of the pleading to add a claim for an implied easement would be futile. For the same reasons, even if Plaintiffs had properly plead a claim for an implied easement, the claim would fail as a matter of law.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1. Plaintiffs' Motion for Summary Judgment (Dkt. 58) is **DENIED**.

2. Defendant's Motion to Dismiss and for Summary Judgment (Dkt. 62) is

   **GRANTED** as follows:

   a. Claim One is dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

   b. Summary judgment is granted on Claims Two, Three, and Four pursuant to Federal Rule of Civil Procedure 56.

   c. Claim Four is dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3).

   d. Judgement will be entered in favor of Defendant separately pursuant to Federal Rule of Civil Procedure 58(a).

DATED: December 12, 2023

Honorable Debora K. Grasham
United States Magistrate Judge

MEMORANDUM DECISION AND ORDER 27